

**U.S. Department of Justice**

**Leah B. Foley**
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*          *John Joseph Moakley United States Courthouse*
                                          *1 Courthouse Way*
                                          *Suite 9200*
                                          *Boston, Massachusetts 02210*


                                          January 16, 2026


Attorney Scott Lauer
Federal Defender's Office
51 Sleeper Street, #5
Boston, MA 02210

          Re:     United States v. Antonio Bonheur
                  Criminal No.

Dear Attorney Lauer:

     The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Antonio Bonheur ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

          1.      Change of Plea

     At the earliest opportunity, Defendant will waive Indictment and plead guilty to Count One and Two of an Information charging the following: Count One, Unauthorized Use, Transfer, Acquisition, Alteration, or Possession of Benefits, in violation of 7 U.S.C. § 2024(b); and Count Two, Wire Fraud, in violation of 18 U.S.C. § 1343.  Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

          2.      Penalties

Defendant faces the following maximum penalties:

- Count One: incarceration for up to five years; supervised release for up to 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

- Count Two: incarceration for up to twenty years; supervised release for up to 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

1

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.     <u>Sentencing Guidelines</u>

The U.S. Attorney agrees, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 20:

a) Defendant's base offense level is 7 (USSG § 2B1.1);

b) Defendant's offense level is increased by 18, because the loss exceeds $3,500,000 (USSG § 2B1.1(b)(1)(J)); and

c) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

d) Defendant's offense level is further decreased by 2, because Defendant meets the criteria set forth under USSG § 4C1.1(a)(1-11).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.     <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

a) incarceration for not more than the low end of the guidelines sentence range as calculated by the U.S. Attorney in paragraph 3;

2

b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

c) 24 months of supervised release;

d) a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing; and

e) forfeiture as set forth in Paragraph 6.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5.      Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence.  Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a) Defendant will not challenge Defendant's conviction on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge Defendant's sentence, including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later

3

claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6.    <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a.   $1,000,000, to be entered in the form of an Order of Forfeiture (Money Judgment), representing the total amount of proceeds derived from Defendant's violation of 18 U.S.C. § 1343;

b.   the following directly forfeitable assets, which constitute or were derived from proceeds traceable to Defendant's violation of 18 U.S.C. § 1343:

1) All funds seized on or about December 17, 2025 from TD Bank account ending in x5420 held in the name of Defendant;
2) All funds seized on or about December 17, 2025 from TD Bank account ending in x9381 held in the name of Jesula Variety Store dba Antonio Bonheur;
3) All funds seized on or about December 17, 2025 from TD Bank account ending in x9672 held in the name of Defendant;
4) Approximately $108,749.96 seized on or about December 17, 2025 from Chase Bank account ending in x5833 held in the name of Jesula Variety Store;
5) Approximately $410.25 seized on or about December 17, 2025 from Chase Bank account ending in x5786 held in the name of dba Bonheur Master Clean & Cargo;
6) Approximately $101,318.80 seized on or about December 17, 2025 from Chase Bank certificate of deposit account ending in x7070 held in the name of Defendant;
7) Approximately $100,000.00 seized on or about December 17, 2025 from Chase Bank certificate of deposit account ending in x1835 held in the name of Defendant;
8) Approximately $643.23 seized on or about December 17, 2025 from Chase Bank account ending in x8689 held in the name of JD Et Co Multi Service LLC;

4

9) Approximately $48,409.58 seized on or about December 17, 2025 from Bank of America account ending in x9550 held in the name of Jesula Variety Store dba Antonio Bonheur;

10) Approximately $5,545.00 seized on or about December 17, 2025 from Bank of America account ending in x7961 held in the name of Defendant;

11) Approximately $2,000.00 seized on or about December 17, 2025 from North Shore Bank account ending in x3637 held in the name of Defendant;

12) Approximately $838.98 seized on or about December 17, 2025 from Rockland Trust account ending in x3188 held in the name of Jesula Variety Store;

13) Approximately $172.50 seized on or about December 17, 2025 from Rockland Trust account ending in x7765 held in the name of Defendant and another;

14) Approximately $10,249.03 seized on or about December 17, 2025 from Rockland Trust certificate of deposit account ending in x7296 held in the name of Defendant and another;

15) Approximately $315.25 seized on or about December 17, 2025 from Bank of Canton account ending in x8666 held in the name of Defendant;

16) Approximately $2,903.70 seized on or about December 17, 2025 from HarborOne Bank account ending in x9194 held in the name of Defendant; and

17) Approximately $25,000 seized from OneUnited Bank certificate of deposit account ending in x8784 held in the name of Defendant; and

c.  the following substitute assets of which Defendant states that Defendant is the sole and lawful owner of, and consents to forfeiture of:

1) $2,705 in United States currency seized on or about December 17, 2025 from 1549 Blue Hill Avenue, Mattapan MA; and

2) $3,460 in United States currency seized on or about December 17, 2025 from 1549 Blue Hill Avenue, Mattapan MA.

Defendant admits that these directly forfeitable assets (b.1-17 above) are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Defendant's offense. Defendant admits that he controlled each of the accounts identified above.

Defendant also admits that $1,000,000 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offenses. The United States agrees to credit the forfeiture money judgment with the proceeds of the assets listed in b.1-17 above after entry of final orders of forfeiture for those assets.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents the amount of proceeds that the Defendant obtained (directly or indirectly), and/or

5

facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets, including, but not limited to, the substitute assets listed in item c.1 and c.2 above.

Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.    Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability,

Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.    Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9.    Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10.    Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*    *    *

7

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Philip A. Mallard.

Sincerely,

LEAH B. FOLEY
United States Attorney

By:    *Peter K. Levitt*

Peter K. Levitt
Chief, Organized Crime Gang Unit
Philip Cheng
Deputy Chief, Organized Crime Gang Unit

*Philip Mallard*

Philip A. Mallard
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have had this letter read to me in my native language and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense(s). I believe this Agreement is in my best interest.

_____
Antonio Bonheur
Defendant

Date: _____2/27/26_____

I certify that Antonio Bonheur has had this Plea Agreement read to Defendant in Defendant's native language and that we have discussed what it means. I believe Antonio Bonheur understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Attorney Scott Lauer
Attorney for Defendant

Date: _____2/27/26_____

9